UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

General Mills, Inc.,

       Plaintiff,

v.                                                                                                                          Civ. No. 05-1253 (JNE/JJG)
                                                                                                                           ORDER

Kraft Foods Global, Inc.,

       Defendant.

Ronald J. Schutz, Esq., and Sang Young A. Brodie, Esq., Robins, Kaplan, Miller & Ciresi, L.L.P., appeared for Plaintiff General Mills, Inc.

Holly A. Harrison, Esq., Sidley Austin LLP, and Tara C. Norgard, Esq., Carlson Caspers Vandenburgh & Lindquist P.A., appeared for Defendant Kraft Foods Global, Inc.

      This is an action by General Mills, Inc., against Kraft Foods Global, Inc. (Kraft), for patent infringement and breach of contract. The case is before the Court on Kraft's Motion to Dismiss the Amended Complaint, General Mills' Motion for Leave to File a Second Amended Complaint, General Mills' Motion for Summary Judgment, and Kraft's Rule 56(f) Motion. For the reasons set forth below, the Court dismisses with prejudice General Mills' patent-infringement claims and dismisses without prejudice General Mills' claim for breach of contract.

## I.    BACKGROUND

      The Court summarizes the allegations of the First Amended Complaint. General Mills is a Delaware corporation, and its principal place of business is in Minneapolis, Minnesota. General Mills owns United States Patent No. 5,284,667 ('667 Patent) and United States Patent No. 5,723,163 ('163 Patent). The former is titled "Rolled Food Item Fabricating Methods," and the latter's title is "Rolled Food Item." Kraft is a Delaware corporation, and its principal place of business is in Northfield, Illinois.

In November 1995, General Mills filed a lawsuit against Farley Candy Company. The lawsuit against Farley Candy included claims related to the '667 Patent and the '163 Patent. In November 1996, General Mills and Farley Candy entered into a Confidential Settlement Agreement (Settlement Agreement), which resolved the lawsuit. Briefly, under the Settlement Agreement, General Mills agreed not to sue Farley Candy or its successors for patent infringement based on rolled food products.

Kraft acquired the Settlement Agreement in 2001. The next year, Kraft sold and transferred certain assets that had belonged to Farley Candy, including a trademark and goodwill, to a subsidiary of Catterton Partners (Catterton Transaction). In 2005, Kraft notified General Mills of its intent to sell and transfer additional assets that had belonged to Farley Candy, including the Settlement Agreement, to Kellogg Company. Notwithstanding General Mills' objection, Kraft transferred the Settlement Agreement to Kellogg in July 2005.

According to General Mills, Kraft lost its rights under the Settlement Agreement by executing the Catterton Transaction. By manufacturing or selling certain rolled food products without the protections of the Settlement Agreement, Kraft allegedly infringed the '667 Patent and the '163 Patent. To the extent Kraft retained any rights under the Settlement Agreement after the Catterton Transaction, General Mills claims that Kraft breached the agreement by transferring it to Kellogg without General Mills' permission.

## II.    DISCUSSION

**A.    Kraft's motion to dismiss**

*1.    Patent infringement*

In Count I of General Mills' First Amended Complaint, General Mills asserts claims of patent infringement against Kraft. Kraft asserts that Count I should be dismissed for failure to

state a claim. *See* Fed. R. Civ. P. 12(b)(6). In opposition to Kraft's motion, General Mills submitted matters outside the complaint. The Court excludes this material and analyzes Kraft's motion under Rule 12. *See* Fed. R. Civ. P. 12(b).

In ruling on a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Midwestern Mach., Inc. v. Nw. Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999); *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993). The court is, however, "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *see Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The court will not dismiss the complaint unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002). The court may consider the complaint, matters of public record, materials necessarily embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). In this case, General Mills attached several documents to the First Amended Complaint: the '667 Patent, the '163 Patent, the Settlement Agreement, a letter from Kraft to General Mills, and letters from General Mills' counsel to Kraft.

According to Kraft, the Settlement Agreement bars General Mills' claims of patent infringement. General Mills does not dispute that its patent-infringement claims would be barred if Kraft were able to assert the Settlement Agreement. General Mills contends, however, that Kraft cannot claim the benefit of the Settlement Agreement after the Catterton Transaction.

3

The parties' dispute turns on interpretation of the Settlement Agreement. The parties agree that Minnesota law controls the Settlement Agreement's interpretation. Under Minnesota law, the principles of contract interpretation apply to the interpretation of a settlement agreement. *Beach v. Anderson*, 417 N.W.2d 709, 711-12 (Minn. Ct. App. 1988). "The construction and effect of a contract presents a question of law, unless an ambiguity exists." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). A contract is ambiguous if it is "reasonably susceptible to more than one interpretation." *Id.* Unambiguous contractual language must be given its plain and ordinary meaning. *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993). "When a contract contains a forfeiture provision, the provision, while strictly construed, is enforceable if it is a clear expression or manifestation of the parties' intent." *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 438 (Minn. Ct. App. 2004) (citing *Naftalin v. John Wood Co.*, 116 N.W.2d 91, 100 (Minn. 1962)). A court may construe an ambiguous contract to avoid a forfeiture. *Id.*

To support its contention that Kraft lost its rights to the Settlement Agreement in 2002, General Mills relies on the assignment provisions, found in Articles 8.3 and 8.4 of the agreement. Article 8.3 provides:

> Except as expressly provided in Article 8.4 herein, neither this Agreement nor any rights granted hereunder may be assigned or otherwise transferred by either General Mills or Farley, nor shall the same inure to the benefit of any trustee in bankruptcy, receiver or other successor of such party, whether by operation of law or otherwise, nor, except as expressly provided in Article 8.4 herein, shall any rights herein be or become in any way directly or indirectly transferable or available to, or divisible or capable of being shared with, any third party, without the prior written consent of the other party, and any assignment, transfer or other disposition without such prior written consent shall be null and void.

Article 8.4 states:

4

> Notwithstanding any provision of this Agreement to the contrary, Farley may assign the entirety of their non-divisible respective rights and obligations under this Agreement, provided that all of the following conditions are satisfied:
>
> a. Farley must transfer its entire rolled food products business, including without limitation, all assets, good will, and trademarks to the party to whom the rights and obligations are being assigned; and
>
> b. Farley must provide General Mills with sixty (60) days written notification prior to the transfer of rights and obligations under this Agreement; and
>
> c. the party receiving the rights and obligations from Farley must not have been charged with infringement by written notice or initiation of litigation by General Mills of any of General Mills' Patents and Applications, as those terms are defined herein, prior to General Mills receiving written notification from Farley pursuant to Article 8.4(b).

The Settlement Agreement defines "Farley" as "Farley Candy Company and its Affiliates, including, without limitation, all parent corporations, subsidiaries, heirs, executors, administrators, and corporate predecessors and successors."

General Mills reads these provisions to divest Kraft of its status as Farley Candy's successor under the Settlement Agreement after the Catterton Transaction. The Court disagrees. Article 8.3 and Article 8.4 restrict the ability of Farley to transfer the Settlement Agreement. Neither article addresses Farley's retention of the Settlement Agreement and sale of other assets. Consequently, the articles do not provide for the loss of successor status upon the sale of assets that had belonged to Farley Candy other than the Settlement Agreement. The Settlement Agreement does not contain a clear expression or manifestation of the parties' intent that a sale by Farley of assets other than the Settlement Agreement would result in the dissolution of successor status. The Court therefore rejects General Mills' interpretation of the Settlement Agreement and disregards its allegation that the Catterton Transaction divested Kraft of rights to the Settlement Agreement. *See Wiles*, 280 F.3d at 870; *Westcott*, 901 F.2d at 1488.

In this case, General Mills recognizes that Kraft succeeded to Farley Candy's rights under the Settlement Agreement in 2001. General Mills also concedes that the Catterton Transaction did not breach the Settlement Agreement.[1] Having excluded the Settlement Agreement from the Catterton Transaction, Kraft retained its benefits at least until 2005 when Kraft allegedly sold the Settlement Agreement to Kellogg. Because Kraft continued to enjoy the benefits of the Settlement Agreement after the Catterton Transaction, General Mills' patent-infringement claims are barred. The Court therefore dismisses Count I of General Mills' First Amended Complaint.

2.    *Breach of contract*

In Count II of General Mills' First Amended Complaint, General Mills alleges that Kraft breached the Settlement Agreement by transferring the Settlement Agreement to Kellogg. According to General Mills, Kraft could not transfer the agreement under Article 8.4 because Kraft could not satisfy Article 8.4(a) after the Catterton Transaction. In addition, General Mills alleges that its objection to transfer of the Settlement Agreement to Kellogg precludes Kraft's reliance on Article 8.3. General Mills alleges that it "has been damaged as a result of Kraft's breach of the Settlement Agreement" and seeks a declaration that "the purported transfer of the Settlement Agreement from Kraft to Kellogg is "null and void."

With regard to the declaratory relief sought by General Mills, the Court notes that "declaratory relief may properly be withheld for nonjoinder of interested parties." *Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953 F.2d 376, 379 (8th Cir. 1992). It seems likely that Kellogg has an interest in General Mills' attempt to declare the transfer of the

---

[1]    In Article 6.1, the Settlement Agreement provides for its termination in the event of a breach by Farley or General Mills. General Mills does not allege that it ever invoked Article 6.1.

Settlement Agreement to Kellogg null and void.  *See* Fed. R. Civ. P. 19(a).  The Court, however, need not resolve this issue because the Court declines to exercise jurisdiction over Count II.

General Mills asserts that the Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a) (2000), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction.  A district court may, in its discretion, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed.  28 U.S.C. § 1367(c)(3); *see Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000); *Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998).  In this case, all claims within the Court's original jurisdiction have been dismissed.  Assuming Count II is part of the same case or controversy as Count I, the Court declines to exercise supplemental jurisdiction over Count II.  The Court therefore dismisses Count II without prejudice.  *See Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 599 (8th Cir. 2002).  Kraft's motion to dismiss is denied as moot insofar as the motion relates to Count II.

**B.     Remaining motions**

In the event the Court granted Kraft's motion to dismiss Count II of the First Amended Complaint, General Mills sought leave to file a Second Amended Complaint that clarifies Count II's damage allegations.  Having declined to exercise supplemental jurisdiction over Count II of the First Amended Complaint, the Court denies as moot the motion for leave to amend.[2]  The

---

[2]     General Mills asserts that the Court should grant leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  Having moved for leave to amend several months after the deadline set in the pretrial scheduling order, General Mills would have had to satisfy the "good cause" requirement of Rule 16(b) to obtain leave to amend.  *See* Fed. R. Civ. P. 16(b); *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999).

Court also denies as moot General Mills' Motion for Summary Judgment and Kraft's Rule 56(f) Motion.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Kraft's Motion to Dismiss the Amended Complaint [Docket No. 59] is GRANTED as to Count I of the First Amended Complaint. The motion is otherwise DENIED AS MOOT.

2. General Mills' Motion for Summary Judgment [Docket No. 67] is DENIED AS MOOT.

3. General Mills' Motion for Leave to File a Second Amended Complaint [Docket No. 69] is DENIED AS MOOT.

4. Kraft's Rule 56(f) Motion [Docket No. 95] is DENIED AS MOOT.

5. Count I of General Mills' First Amended Complaint [Docket No. 38] is DISMISSED WITH PREJUDICE.

6. Count II of General Mills' First Amended Complaint [Docket No. 38] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 28, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge